2008 ME 23

**PORTLAND WATER DISTRICT**

v.

**TOWN OF STANDISH.**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2007.

Decided: Jan. 31, 2008.

Kenneth M. Cole, III, Esq. (orally), Jensen Baird Gardner & Henry, Portland, ME, for Town of Standish.

William S. Harwood, Esq. (orally), Seth Brewster, Esq., Verrill Dana LLP, Portland, ME, for Portland Water District.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] The Town of Standish appeals from the judgment of the Superior Court (Cumberland County, *Humphrey, C.J.*) vacating the Standish Town Council's decision to accept the dedication of a public easement over a portion of the Northeast Road Extension leading to Sebago Lake. Pursuant to M.R. Civ. P. 80B, Portland Water District had filed a petition for review of the Town's decision. The Town contends that the court erred when it concluded that the Town Council's decision to accept the public easement was precluded by the doctrine of res judicata. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The Northeast Road Extension (Northeast Road) is a public way running between Route 35 and Sebago Lake in Standish. Northeast Road was originally established as an eight-rod-wide public way in 1767.[1] *Portland Water Dist. v. Town of Standish (Portland Water District I )*, 2006 ME 104, ¶ 6, 905 A.2d 829, 831. In 1933, it was redefined and accepted by the Town as a six-rod-wide county highway. *Id.* In 1935, the Portland Water District (the Water District) obtained title to the land adjacent to and on both sides of Northeast Road (the Adjacent Property). *Id.* ¶¶ 2, 7, 905 A.2d at 830–31. Since 1935, "members of the public have used the Northeast Road Extension for access to Sebago Lake and the Town has maintained a boat ramp and some parking in the area without the permission of the Water District." *Id.* ¶ 7, 905 A.2d at 831.

[¶ 3] In 2004, the Water District filed a complaint against the Town in the Superior Court seeking a declaratory judgment that the Town did not have a prescriptive easement over the Adjacent Property. In 2005, the Superior Court granted the Wa-

---

1. A rod is approximately sixteen and one-half feet wide.

ter District's motion for summary judgment, concluding that "[t]he public has not acquired, and does not have, any prescriptive rights to cross or use the [Adjacent Property]." We affirmed the 2005 Superior Court decision in August of 2006. *Id.* 125, 905 A.2d at 836. We determined that the Town was legally barred by the doctrine of *nullum tempus* from asserting a public prescriptive easement over government property, including District property. *Id.* ¶¶ 1, 24, 905 A.2d at 830, 836.

[¶ 4] While the appeal in *Portland Water District I* was pending, on March 14, 2006, the Standish Town Council voted to "accept [ ] the dedication of a public easement" over the two one-rod strips abutting each side of Northeast Road pursuant to 23 M.R.S. § 3025 (2007). The Water District then filed the current action in the Superior Court pursuant to M.R. Civ. P. 80B, appealing the Town's March 2006 decision to accept dedication of the easement, on the grounds that that action was barred by res judicata or collateral estoppel. Following a hearing, the Superior Court vacated the Town's decision.[2] This appeal by the Town followed.

## II. DISCUSSION

[¶ 5] The crux of this appeal concerns whether our decision in *Portland Water District I,* and the underlying proceedings in that case, included an adjudication as to the two one-rod strips of property on either side of Northeast Road that were part of the establishment of the eight-rod road in 1767, but which were not included in the Town's acceptance of the six-rod road in 1933.

[¶ 6] In its decision that led to the present appeal, the Superior Court concluded that *Portland Water District I* dealt with *all* of the property adjacent to

the six-rod Northeast Road, including the two one-rod strips on either side of the road, and therefore that the Town was precluded by res judicata from taking further action as to those two strips by accepting a public easement across them. The Town contends that the property at issue in *Portland Water District I* did not include the two one-rod strips, that the adjudication of *Portland Water District I* did not involve a determination as to the Town's authority to accept a dedication of the two one-rod strips, and that the Town did not and could not have litigated its authority to do so in *Portland Water District I.*

[¶ 7] The doctrine of res judicata prevents the relitigation of matters already decided: "The law is plain that [parties] cannot again come forward in the same legal mission against the same parties to secure a remedy ... previously denied." *Harriman v. Border Trust Co.,* 2004 ME 28, ¶ 5, 842 A.2d 1266, 1267 (quotation marks omitted); *see also Macomber v. MacQuinn–Tweedie,* 2003 ME 121, ¶ 22, 834 A.2d 131, 138–39. It consists of two components: issue preclusion and claim preclusion. *Macomber,* 2003 ME 121, ¶ 22, 834 A.2d at 138. A court's conclusion that either issue preclusion or claim preclusion bars a particular litigation is an issue of law reviewed de novo. *Norton v. Town of Long Island,* 2005 ME 109, ¶ 16, 883 A.2d 889, 895.

[¶ 8] "Claim preclusion prevents relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Macomber,* 2003 ME 121, ¶ 22, 834 A.2d at 139 (quotation marks

2. The court initially remanded the matter to the Town Council. On the Town's motion, the court subsequently amended the judgment

by striking the remand language, allowing the Town to take the appeal to this Court.

omitted). To determine whether a claim is barred, we apply a transactional test, "examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Norton*, 2005 ME 109, ¶ 18, 883 A.2d at 895 (quotation marks omitted). Such a claim is precluded even if the second action "relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." *Id.* (quotation marks omitted). Because, in the present matter, the two actions at issue involve different claims—the first an appeal from the entry of a declaratory judgment, and the second an administrative appeal of a municipal decision pursuant to M.R. Civ. P. 80B—claim preclusion is not the appropriate analysis.

▮▮▮▮ [¶ 9] Issue preclusion, or collateral estoppel, "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138–39 (quotation marks and alteration omitted). Whereas claim preclusion is focused on the claims set forth in the prior proceeding, collateral estoppel concerns factual issues, and applies even when the two proceedings offer different types of remedies. *Id.* ¶ 22, 834 A.2d at 139. Collateral estoppel can be applied to administrative proceedings as well as to court proceedings. *Id.*

▮▮▮▮ [¶ 10] There is no dispute that *Portland Water District I* resulted in a valid final judgment. We must therefore determine whether the issue of the Town's authority to accept an easement in the two one-rod strips was considered in *Portland Water District I*, and whether the Town had both the opportunity and incentive to litigate the issue.

A.  Identical Issue

[¶ 11] The Town contends that the subject of the current action is entirely different from the subject of *Portland Water District I*, and that the property in dispute in *Portland Water District I* did not include the two one-rod strips. The Superior Court's judgment in *Portland Water District I* described the property at issue as "adjacent to and on both sides of Northeast Road Extension." The term "adjacent" is commonly defined as "[n]ext to" or "adjoining." THE AMERICAN HERITAGE DICTIONARY 79 (2nd ed.1982). By this definition, the property adjacent to Northeast Road refers to the property actually bordering it, and thus would include the two one-rod strips lying immediately on either side of the now six-rod-wide road. Further, the judgment expressly refers to the "two-rod-wide strip lying adjacent to the Northeast Road." The Adjacent Property about which *Portland Water District I* was litigated *did* include the two one-rod strips at issue in the instant matter.[3]

---

**3.** The Town also argues that the two one-rod strips could not have been adjudicated in *Portland Water District I* because the fee owners of those strips are indispensable parties who were not joined in that action. There is no dispute that *Portland Water District I* did not determine fee ownership of the Adjacent Property. Indeed, we noted that "[t]o the extent that title remains disputed, it has not been adjudicated, and we do not address the fee ownership here." *Portland Water District v. Town of Standish*, 2006 ME 104, ¶ 10 n. 1, 905 A.2d 829, 832. The Town asserts that in order for acceptance of an easement over the two one-rod strips to have been litigated in *Portland Water District I*, the "descendents of the Proprietors of Pearsontown [the former

**B. Opportunity and Incentive to Litigate**

[¶ 12] As to the issue of the Town's litigation of its authority to accept a public easement over the two strips, the Town not only could have raised and argued that issue in *Portland Water District I*, but in fact did. More specifically, the record from *Portland Water District I* contains the following references to the Town's authority to accept the two one-rod strips lying immediately adjacent to Northeast Road: the Superior Court's order on the Town's motion to dismiss the Water District's initial complaint framed one issue before it as "whether, because the Town accepted only 6 rods of the 8 rod road, the remaining two rods may still be accepted"; the Town's memorandum of law in opposition to the Water District's motion for summary judgment noted that the Adjacent Property discussed by the Water District was not fully described, and went on to expressly argue that the Town maintains a right to accept a public easement over the two one-rod strips of the original eight-rod roadway that were as yet unaccepted; in its statement of facts in opposition to the Water District's motion for summary judgment, as well as supporting documentation, the Town challenged the Water District's definition of Northeast Road to include the two one-rod strips "not yet . . . accepted" by the Town, and explicitly "reserved the right to accept the incipient dedication of the two rod wide strip (the difference between the original 8–rod rangeway layout and the 6–rod wide town way)"; and in its order on the Water District's motion for summary judgment, the Superior Court noted that "[t]he Town claims that there exists a material issue of fact as to whether the Water District's ownership of the Adjacent Land is subject to a reservation of right by the Town to accept an incipient dedication of a two-rod-wide strip lying adjacent to the Northeast Road," and that "[t]he Town also claims that there is a disputed issue of material fact with respect to whether it has a claim to a two-rod strip of land adjacent to the Northeast Road." In its summary judgment, the Superior Court concluded that: "to the extent the Town argues that the District took the Adjacent Land in 1935 subject to a right of the Town to 'accept' the dedicated two rods of width surrounding the current six-rod road, [the Town's] argument is not supported by record citations and, thus, raises no genuine issue of material fact."

[¶ 13] The Town appealed that 2005 Superior Court judgment, and in its brief argued that "the Town has reserved the right to accept the incipient dedication of the two 1–rod wide strips of the rangeway that have not yet been made a part of the 6–rod wide public road," and that "[b]y determining in its [summary judgment order] that there is no factual dispute as relates to . . . the two 1–rod wide strips of land on either side of Northeast Road Extension, the Superior Court committed an error of both fact and law." Finally, in

name of Standish]," who, through a series of conveyances, gave a parcel of property adjoining Northeast Road to the Town, as possible fee owners, would have to have been joined as indispensable parties. *See Lamson v. Cote*, 2001 ME 109, 775 A.2d 1134. Because those heirs were not joined as parties, the Town contends, to the extent *Portland Water District I* did consider the two one-rod strips, it was error to have done so.

Assuming, arguendo, that the Town is correct in observing that the heirs of the original abutters must be joined as parties in any litigation that could affect their rights to certain property, any failure to do so in the present litigation would not bar those heirs from seeking redress in the future. Prior litigation that meets the other requirements of collateral estoppel, however, does operate to bar the Town itself from seeking future determinations of easement rights in identical property.

**1102**

its reply brief in that appeal, the Town contended, "[a]s it relates to the Town's right to accept the incipient dedication of those two 1–rod wide strips, it is undisputed that the Town Council voted to extend the time period for accepting certain dedicated but unaccepted ways," including the two one-rod strips bordering Northeast Road. Although the issue of whether the Town had acquired a prescriptive easement over the two one-rod strips was the only issue discussed in our opinion in *Portland Water District I,* the record makes clear that the issue of the Town's right to accept a public easement over the two one-rod strips of property lying next to the six-rod Northeast Road *was* litigated before the Superior Court, and that the Town's position did not prevail. Indeed, as the Superior Court expressly found in this case, our decision in *Portland Water District I,* "affirmed the Superior Court's decision without reservation or modification."

[¶ 14] Thus in *Portland Water District I,* the Town not only could have, but in fact did raise all current or potential claims it had to a possessory interest in the two strips; it argued both that it had a prescriptive easement over the property that included the two one-rod strips, *and,* in addition, that it had the right to accept an easement over the two strips pursuant to statute. The Town was unsuccessful as to both issues before the Superior Court, and in its appeal to this Court.

[¶ 15] In the present case, the Town seeks to convince us, as it sought to convince the Superior Court, that necessary prerequisites to that determination were missing from *Portland Water District I* Although the identity of the fee simple owner or owners of the two one-rod strips may not be known, and there may be other encumbrances to which the strips might be subject, the Town's argument that it could accept the dedication of the public easement over the two one-rod strips was un-

successfully advanced in *Portland Water District I,* and a final judgment issued. The Town took advantage of the full opportunity it had to litigate the issue in *Portland Water District I,* and the Superior Court correctly concluded that the Town is collaterally estopped from accepting the dedication of a public easement in the two one-rod strips adjacent to Northeast Road.

The entry is:

Judgment affirmed.